**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NANCY REUTER and JACK REUTER,<br><br>Plaintiffs,<br><br>v.<br><br>MEDTRONICS, INC.; MEDTRONIC OF CANADA, LTD.; GUIDANT CORPORATION; JASBIR S. SARKARIA, M.D.; ABC CORPORATIONS (being fictitious names); XYZ CORPORATIONS (being fictitious names); JOHN DOE (being fictitious names),<br><br>Defendants. | No. 10-3019 (WJM)<br><br>**REPORT AND RECOMMENDATION** |

**FALK, U.S.M.J.**

Plaintiffs initiated this personal injury action in state court following an incident in which a pacemaker installed in Plaintiff Nancy Reuter malfunctioned. On June 14, 2010, Defendant Guidant removed the case [CM/ECF No. 1]. Before the Court is Plaintiffs' motion to remand back to state court and award attorneys' fees. [CM/ECF No. 9]. Defendant Guidant opposes the motion [CM/ECF No. 12]. The Honorable William J. Martini, U.S.D.J., referred the motion for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was not heard. Fed. R. Civ. P. 78(b). For the reasons set forth below, it is respectfully recommended that Plaintiffs' motion to remand should be **granted** and the request for attorneys' fees **denied**.

1

## I.  Background

Plaintiffs Nancy Reuter and Jack Reuter are citizens of the state of New Jersey (Notice of Removal ("NOR") ¶ 7 [CM/ECF No. 1]). On June 1, 2007, Plaintiff Nancy Reuter underwent surgery to receive a pacemaker and corresponding medical devices (NOR, Ex. 1 ("Compl.") ¶ 11-12). The surgery was performed by Jasbir S. Sarkaria, M.D. ("Dr. Sarkaria"), a licensed physician and citizen of New Jersey (NOR ¶ 11; Compl. ¶¶ 5, 11-12). Following the surgery, Plaintiff Nancy Reuter developed severe cardiac complications that required emergency surgery (Compl. ¶¶ 13-14; Letter from Barry M. Packin, dated October 13, 2010 ("Pls.' Oct. 13 Letter"), at 1 [CM/ECF No. 24]). She underwent a secondary surgery to have a different pacemaker installed (Pls.' Oct. 13 Letter, at 2).

On April 10, 2010, Plaintiffs brought suit in the Superior Court of New Jersey, Middlesex County, against Dr. Sarkaria, certain companies involved in the design and distribution of the aforementioned pacemaker, and several fictitious entities. Plaintiff Nancy Reuter alleges strict products liability with respect to Guidant Corporation ("Guidant"), Medtronic, Inc., and Medtronic of Canada, Ltd. Guidant is an Indiana company that was involved in the distribution of a component that interfaces with the pacemaker (NOR ¶ 8; Vonderharr Aff. ¶ 4). Medtronic, Inc. is a Delaware company, with its principal place of business in Minnesota, alleged to manufacture components of the pacemaker unit itself (NOR ¶ 9; Compl. ¶¶ 15-53). Medtronic of Canada, Ltd. is a wholly owned subsidiary of Medtronic, Inc., with its principal place of business in Ontario, Canada, alleged to also manufacture components of the pacemaker unit itself (NOR ¶ 10; Compl. ¶¶ 15-53). She also alleges medical malpractice with respect to Dr. Sarkaria (Compl. ¶¶ 54-59). Plaintiff Jack Reuter alleges loss of consortium (Compl. ¶¶ 60-63).

Guidant removed the case to federal court pursuant to 28 U.S.C. §§ 1441 on the basis of diversity jurisdiction, id. § 1332, notwithstanding the common New Jersey citizenship of the Plaintiffs and Defendant Dr. Sarkaria. Guidant asserts that the citizenship of Dr. Sarkaria should be "disregarded" for purposes of jurisdiction (NOR ¶ 11). It argues that Dr. Sarkaria was "improperly joined" as a codefendant under Federal Rule of Civil Procedure ("FRCP") 20(a) because the medical malpractice claim is legally and factually distinct from the product liability claims against the other Defendants (NOR ¶ 23). Guidant proposes that the Court sever the claim against Dr. Sarkaria pursuant to FRCP 21 and assert jurisdiction over the remaining claims against the diverse Defendants (NOR ¶¶ 27-28, 33).

Plaintiffs filed this motion to remand and award attorneys' fees pursuant to 28 U.S.C. § 1447(c) on July 13, 2010 (Notice of Pls.' Mot. to Remand ("Notice of Pls.' Mot.") [CM/ECF No. 9]). They characterize Guidant's argument that Dr. Sarkaria was "improperly joined" as a form of "fraudulent joinder" (Notice of Pls.' Mot. Attach. 1 ("Pls.' Brief"), at 4[CM/ECF No. 9]). Guidant claims that Dr. Sarkaria was included as a codefendant for the sole purpose of defeating federal jurisdiction (Pls.' Brief at 4). Plaintiffs contend that Guidant has not met its heavy burden to prove that the joinder was legally fraudulent (Pls.' Brief at 5-6). They also argue that the medical malpractice claim constitutes part of the same transaction or occurrence for purposes of the FRCP 20(a) (Pls.' Brief at 7-13). Specifically, Plaintiffs state that the original pacemaker installed in Nancy Reuter contained a "retracted" screw with a "bent" tip (Pls.' Oct. 13 Letter Attach. A, Ex. A, at 2). They assert that the injuries sustained by Nancy Reuter could only be the result of improper implantation by Dr. Sarkaria, a product defect, or some combination thereof (Pls.' Oct. 13 Letter 3). Indeed, they question whether Dr. Sarkaria is to blame for the bent screw.

## II.  Discussion

A. Removal

28 U.S.C. § 1441 et seq. (2006), provides that a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Id. § 1441(a). The party asserting federal jurisdiction in a removal case bears the heavy burden of "showing, at all stages of the litigation, that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (citing Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004)). Removal is "strictly construed" and all doubts are resolved in favor of remand. See Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985). There being no federal question alleged, the Court turns to the diversity of citizenship provisions of 28 U.S.C. § 1332.

    1.  Diversity of Citizenship

The federal statute governing diversity of citizenship provides the district court with original jurisdiction over civil cases "between . . . citizens of different States" that place over $75,000 into controversy. Id. § 1332(a). For diversity jurisdiction to exist there must be "complete diversity" between all plaintiffs and all defendants. Caterpillar Inc. v. Lewis, 519 U.S. 651, 68 (1996). However, the right to remove is unavailable in cases predicated on diversity of citizenship if any defendant "is a citizen of the State in which [the] action [was] brought." 28 U.S.C. § 1441(b); see also Lincoln Prop. Co. v. Roche, 546 U.S. 81, 90 (2005).

Plaintiffs are citizens of New Jersey. To satisfy the rule of complete diversity, no Defendant can be a New Jersey citizen. Defendant Sarkaria, however, is a citizen of New Jersey. His presence ostensibly destroys complete diversity. See Wisc. Dept. of Corrections v. Schacht, 524 U.S. 381, 388 (1998) (citing Caterpillar, 519 U.S. at 68-69). It also brings the

case within the § 1441(b) exception to removal because the action was originally brought in New Jersey. 28 U.S.C. § 1441(b); Lincoln Prop., 546 U.S. at 90. The Court may only exercise jurisdiction if it somehow overlooks Dr. Sarkaria's citizenship.

### 2. Fraudulent Joinder

Fraudulent joinder is about frivolousness. A court will deem the joinder of an additional party fraudulent only when "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." Boyer v. Snap-on Tools Corp., 913 F.3d 108, 111 (3d Cir. 1990) (quoting Abels, 770 F.2d 26, 32 (3d Cir. 1985)). For fraudulent joinder to apply, the claim must be "wholly insubstantial and frivolous." Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992). Ultimately, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Boyer, 913 F.2d at 111 (quotation omitted). A fraudulently joined party will be disregarded for purposes of diversity. See Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).

Guidant makes no attempt to demonstrate traditional fraudulent joinder. It does not address the sufficiency of the pleadings or the legal theory asserted against Dr. Sarkaria. In all events, Plaintiffs' state court complaint contains sufficient allegations to defeat any fraudulent joinder argument. See, e.g., Mersmann v. Continental Airlines, 335 F. Supp. 2d 544, 556 (D.N.J. 2004). The legitimacy of Plaintiff's claim is buttressed by an Affidavit of Merit supporting the malpractice claim against Dr. Sarkaria, as required under N.J. Stat. Ann.

§ 2A:53A-26 et seq. (West 2010) [CM/ECF No. 20]. Thus, to the extent Guidant alleges fraudulent joinder, its argument is without merit.

### 3. Fraudulent Misjoinder

In futile attempt to stay in federal court, Guidant seeks severance of the claim against Dr. Sarkaria because it contends his joinder in the action is somehow procedurally defective. In other words, Guidant argues that Dr. Sarkaria is unrelated to the other claims in this case. Guidant's argument is factually incorrect; the claims against Dr. Sarkaria are directly related to those against the other Defendants. However, before providing the details, some explanation of the purported legal basis for Guidant's argument is warranted.

#### (a) Legal Basis

Although Defendant does not directly say so, their argument is apparently based on what some courts call "fraudulent misjoinder." Fraudulent misjoinder refers to a situation where a plaintiff attempts to frustrate a defendant's right to remove by joining a non-diverse party in violation of the applicable joinder rule. See 14B Charles Alan Wright et al., Federal Practice and Procedure § 3723 (4th ed. 2009). While traditional fraudulent joinder probes the genuineness of a claim, fraudulent misjoinder tests the procedural basis of a party's joinder. See, e.g., Geffen v. General Elec. Co., 575 F. Supp. 2d 865 (N.D. Ohio 2008). In the rare cases where it is recognized, the doctrine may operate as an exception to the complete diversity rule. In re Prempro Prods. Liability Litig., 591 F.3d 613, 620 (8th Cir. 2010); Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).

In theory, fraudulent misjoinder is conceptually linked to traditional fraudulent joinder. Just as a plaintiff can preclude removal by asserting a frivolous claim against a non-diverse party, fraudulent misjoinder recognizes that the same can be accomplished by joining

a legitimate claim against a legally unrelated, non-diverse opponent. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000) ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action."). When the procedural basis for joining a non-diverse party is completely lacking, there is sufficient indicia that the party was joined solely to destroy diversity and frustrate the defendant's right to remove. See E. Farish Percy, Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine, 29 Harv. J.L. & Pub. Pol'y 569, 580 (2006).

The fraudulent misjoinder concept was first articulated by the Eleventh Circuit in Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353 (11th Cir. 1996). In Tapscott, the Eleventh Circuit acknowledged that improper party joinder can operate to defeat a defendant's right to remove. Id. at 1360. It noted, however, that the misjoinder must be "egregious" in order to rise to the level of being fraudulent. Id. The Eleventh Circuit clarified in a subsequent decision that part of what made the misjoinder in Tapscott egregious was that there was "no real connection" between the underlying facts of the two classes of claims. Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1289 (11th Cir. 1998).

Several other circuits have acknowledged fraudulent misjoinder in the wake of Tapscott, but few have formally adopted the principle. See Lafalier v. State Farm Fire & Cas. Co., No. 10-5082, 2010 WL 3274438, at *6 (10th Cir. Aug. 19, 2010); Anderson v. Bayer Corp., 610 F.3d 390, 394 (7th Cir. 2010); In re Prempro Prods. Liability Litig., 591 F.3d 613, 622 (8th Cir. 2010); In re Benjamin Moore & Co., 318 F.3d 626, 630-31 (5th Cir. 2002); Ca. Dump Truck Owners Ass'n v. Cummins Engine Co., Inc., 24 Fed. Appx. 727, 729 (9th Cir. 2001).

The Third Circuit has not addressed the issue of improper party joinder as a means to defeat a defendant's right to remove. See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 624 F. Supp. 2d 396, 412 n.46 (E.D. Pa 2009). In fact, it noted that it was not deciding that issue in a recent case. See Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 156 n.11 (3d Cir. 2009). In the only decision on fraudulent misjoinder in this district, the Court refused to apply the concept due to "the confusion and uncertainty around this doctrine [fraudulent misjoinder]." Kaufman v. Allstate Insurance Company, No. 07-6160, 2010 WL 2674130, at *7-*8 (D.N.J. June 30, 2010).[1]

### (b)  Joinder Pursuant to FRCP 20(a)

Party joinder is permissible under FRCP 20(a) when the claim "aris[es] out of the same transaction, occurrence, or series of transactions or occurrences" and involves "any question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2); see also Waterloov Gutter Protection Sys. Co. v. Absolute Gutter Protection, L.L.C., 64 F. Supp. 2d

---

[1] Despite the lack of uniformity across federal appellate courts, district courts in a number of jurisdictions outside the Eleventh Circuit have acknowledged and applied the fraudulent misjoinder principle. See, e.g., Coastal Constr. Co. v. N. Am. Specialty Ins. Co., No. 10-206, 2010 WL 2816694, at *7 (D. Hawaii July 14, 2010); Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co., 670 F. Supp. 2d 555 (N.D. Tx. 2009); Culhane Commc'n v. Fuller, 489 F. Supp. 2d 959 (D.S.D. 2007); Lief's Auto Collision Ctrs. v. Progressive Halcyon Ins. Co., No. 05-1958, 2006 WL 2054552 (D. Or. July 21, 2006); Bowling v. Kerry, Inc., 406 F. Supp. 2d 1057 (E.D. Mo. 2005); Asher v. Minn. Mining & Mfg. Co., No. 04-cv-522, 2005 WL 1593941 (E.D. Ky. June 30, 2005); Greene v. Wyeth, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004); Jackson v. Truly, 307 F. Supp. 2d 818 (N.D. Miss. 2004); Grennell v. W.S. Life Ins. Co., 298 F. Supp. 2d 390 (S.D. W. Va. 2004); In re Diet Drugs Prods. Liab. Litig., 294 F. Supp. 2d 667 (E.D. Pa. 2003); In re Bridgestone/Firestone, Inc. (Tires Prods. Liab. Litig.), 260 F. Supp. 2d 722 (S.D. Ind. 2003); In re Rezulin Prods. Liab. Litig., 168 F. Supp. 2d 136 (S.D.N.Y. 2001); Scott v. Am. Tobacco Co., 959 F. Supp. 340 (E.D. La. 1996). A small minority refuse to apply the doctrine in its entirety either because it promotes unnecessary procedural complexity or its standard is inherently vague. See Geffen v. General Elec. Co., 575 F. Supp. 2d 865 (N.D. Ohio 2008); Rutherford v. Merck & Co., 428 F. Supp. 2d 842, 851-52 (S.D. Ill. 2006); Osborn v. Metro. Life Ins. Co., 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004); Palmer v. Davol, Inc., No. 08-2499, 2008 WL 5377991 (D.R.I. Dec. 23, 2003).

398, 407 (D.N.J. 1999) (citing Morris v. Paul Revere Ins. Grp., 986 F. Supp. 872, 885-86 (D.N.J. 1997)).[2] Misjoinder occurs when a party is joined on the basis of a claim that does not involve common questions of law or fact or does not arise from the same transaction. See DirecTV, Inc. v. Leto, 467 F.3d 842, 844-45 (3d Cir. 2006). Fraudulent misjoinder, however, contemplates something more than "mere misjoinder." Tapscott, 77 F.3d at 1360. Instead, the misjoinder must be so "egregious" under the applicable rule that there is "no real connection" between the claims asserted against the two parties. Triggs, 154 F.3d at 1289.

Generally, the joinder rules favor "entertaining the broadest possible scope of action consistent with fairness to the parties," and, more specifically, "joinder of claims, parties and remedies is strongly encouraged." United Mine Workers of Am. V. Gibbs, 383 U.S. 715, 724 (1966). Courts give the permissive joinder rule liberal construction in the interest of trial convenience and judicial economy. See Hagan v. Rogers, 570 F.3d 146, 157 (3d Cir. 2009); Watford v. Balicki, No. 09-5271, 2010 WL 1752510, at *6 (D.N.J. April 30, 2010) (citing Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002)).

(c)  Analysis

---

[2] There is some disagreement on whether the state or federal rule on permissive party joinder should be used to assess the propriety of a party's joinder. The prevailing view looks to the applicable state rule on party joinder because the state court is where joinder initially takes place. See, e.g., Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F. Supp. 2d 357, 381 (S.D.N.Y. 2006); In re Diet Drugs Prods. Liab. Litig., 294 F. Supp. 2d at 673; Jamison v. Purdue Pharma Co., 251 F. Supp. 2d 1315, 1321 n.6 (S.D. Miss. 2003); Conk v. Richards & O'Neil, LLP, 77 F. Supp. 2d 956, 971 (S.D. Ind. 1999). Another camp, following the lead of the Eleventh Circuit in Tapscott, looks to Rule 20(a) of the FRCP. See, e.g., In re Silica Prods. Liab. Litig., 398 F. Supp. 2d 563, 649-50 (S.D. Tex. June 30, 2005); Burns v. W.S. Life Ins. Co., 298 F. Supp. 2d 401, 402-03 (S.D. W. Va. 2004); In re Diet Drugs, MDL 1203, 1999 WL 554584 at *3 (E.D. Pa. July 16, 1999). There is no need to address this choice of law issue here because the relevant New Jersey court rule on permissive party joinder is "virtually identical" to its federal counterpart. Housing Auth. of City of Jersey City v. Jackson, 749 F. Supp. 622, 627 n.7 (D.N.J. 1990). The analysis therefore proceeds on the basis of FRCP 20(a). See In re Prempro Prods., 591 F.3d at 622 n.6 (continuing analysis under FRCP 20(a) where state and federal rules are same).

Even assuming fraudulent misjoinder in its most expansive form was accepted in this Circuit (which it clearly is not), it would not apply here. The claims against Dr. Sarkaria and the other Defendants are intertwined. All of Plaintiffs' claims arise from the same surgery. The non-diverse Defendant installed the product manufactured and distributed by the diverse Defendants. The injury sustained by Nancy Reuter is alleged to result from the same event. More specifically, Plaintiffs argue that her injury could only be a result of improper implantation, a product defect, or some combination thereof. At this early stage, it is impossible to know the precise contours of the facts. However, to the extent that the "bent screw" was a cause of Nancy Reuter's injury, Plaintiffs allege that the problem was caused by Dr. Sarkaria, the product itself, or both. Thus, the claims are clearly logically related and are likely to involve common questions of fact. There is also a potential for overlapping liability. To the extent each Defendant tries to shift liability, the design and manufacture of the product and Dr. Sarkaria's conduct will be central issues. Severing the claims would result in the duplication of evidence, increase the cost of litigation, and carries with it the potential for inconsistent verdicts.

The joinder of claims in this case is proper under the Rules, efficient, and sensible. Indeed, other courts have permitted jurisdiction-destroying joinder of claims against a treating physician with product liability claims against the manufacturer of an item used during treatment. See, e.g., Massaro v. Bard Access Sys., Inc., 209 F.R.D. 363, 368 (E.D. Pa. 2002) (joining medical malpractice claim against treating physicians with product liability claims against manufacturer of device used during treatment); Hunt v. Stryker Corp., No. 03-7385, 2003 WL 502186, at *2 (S.D.N.Y. March 10, 2004) (remanding after joining claims against non-diverse surgeon with claims against product manufacturers); Rodriguez v. Abbot

10

Labs, 151 F.R.D. 529 (S.D.N.Y. 1993) (permitting joinder of medical malpractice claim against hospital in suit for products liability where doing so would destroy diversity and require remand). Needless to say, the joinder of the claims against Dr. Sarkaria cannot possibly be an egregious deviation from Rule 20(a)(2). To the contrary, severing the claims under the fact scenario alleged might be viewed as "egregious."

In sum, Dr. Sarkaria's presence in the suit destroys complete diversity and triggers application of the limitation found in 28 U.S.C. § 1441(b). The Court therefore recommends that the case should be remanded to state court.

### B. Attorneys' Fees

Plaintiffs also seek costs and fees pursuant to 28 U.S.C. § 1447(c). The decision to award attorney fees rests within the broad discretion of the Court. See Siebert v. Norwest Bank Mn., 166 Fed. Appx. 603, 606-07 (3d Cir. 2006). In Martin v. Franklin Corp., the Supreme Court indicated that an award for attorneys' fees under 28 U.S.C. § 1447(c) is appropriate only where the removing party lacks an "objectively reasonable basis" for removal. 546 U.S. 132, 141 (2005). Given the "confusion and uncertainty" regarding the fraudulent misjoinder doctrine, Kaufman v. Allstate Insurance Company, No. 07-6160, 2010 WL 2674130, at *7 (D.N.J. June 30, 2010), this Court cannot conclude that Defendants' removal was frivolous. Martin, 546 U.S. at 141. While this Court ultimately determines that remand is proper, there is no justification for an award of costs. It is therefore recommended that Plaintiffs should not be awarded fees pursuant to 28 U.S.C. § 1447(c).

### III. Conclusion

For the reasons stated above, it is respectfully recommended that Plaintiffs' motion to remand should be **granted** and their motion for costs and attorneys' fees should be **denied**.

                                    <u>s/Mark Falk</u>
                                    **MARK FALK**
                                    **United States Magistrate Judge**

Dated: November 5, 2010